UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

ALAN RAMIREZ,

                Petitioner,

-against-

WILLIAM PHILLIPS, Superintendent,

                Respondent.

------------------------------------------------------------ X

NOT FOR PUBLICATION

**MEMORANDUM
DECISION AND ORDER**

04 Civ. 1516 (BMC)

**COGAN**, District Judge.

I assume familiarity with the facts underlying this petition for a writ of habeas corpus under 28 U.S.C. §2254. The original petition identified three points for review but petitioner's memorandum of law (labeled a "traverse"), filed after respondent filed his opposition, briefed only two of those. To the extent petitioner has not abandoned the point he has not briefed, I find it to be without merit.[1] As to the remaining two points, the state courts on direct appeal rejected the claims that petitioner makes here, and, accordingly, I will apply the deferential standard of review under 28 U.S.C. §2254(d) as explained in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).

---

[1] Petitioner had claimed that the prosecutor submitted improper evidence to the grand jury, which does not present a federal constitutional claim. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); Davis v. Mantello, 42 Fed. Appx. 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.").

## I. <u>Brady/Giglio</u> Violation

Before trial, petitioner received discovery of the plea agreements that Rodriguez and Ibrahim, his co-conspirators in the murder of Marvin Zaretsky, had received. The plea agreements required these accomplices to testify truthfully if called upon to do so in exchange for greatly reduced sentences, and, for Rodriguez, a letter of recommendation to the Parole Board, placement in a secure prison, and relocation of family members. At trial, the prosecution brought out both witnesses' plea agreements on direct examination. Rodriguez was extensively cross-examined on his preparation for testifying at trial under the direction of the Assistant District Attorney; his drug use and sales; his selective memory; and his repeated perjury (30-50 false answers) before the grand jury. He admitted that these lies were told in an effort to further his self-interest. Similarly, Ibrahim was cross-examined on what a good deal he had made in his plea agreement; his prior armed robberies; his car thefts; his drug use; and his dissembling to police about petitioner's and his own involvement in this murder.

Petitioner asserts that he did not learn in discovery that Rodriguez was taken out of prison to meet with the Assistant District Attorney and was given food and cigarettes while at the District Attorney's office; that the District Attorney drove him to view the crime scene; and that when Rodriguez considered changing his mind about testifying after he had signed the plea agreement, the District Attorney told him that he would face life imprisonment for the murder if he violated his plea agreement, as the plea agreement provided. Petitioner similarly asserts that he received no discovery that before the trial, Ibrahim was transported to the District Attorney's Office, and that he met his family there and received food there.

2

Petitioner asserts that these undisclosed benefits constitute information that should have been provided to him in discovery under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763 (1972). He argues that because the prison environment is unpleasant, the food is bad, cigarettes are the equivalent of currency in prison, and family visits are difficult, transport to the District Attorney's Office and food and family visits given there are benefits that should have been disclosed so that such facts could be used for impeachment.

In light of the information that petitioner knew prior to and which he used at the trial, together with the other evidence in the case against him, this is not information that had to be disclosed. The decision of whether a non-disclosure rises to the level of a Brady violation is for the Court to determine, not, as petitioner asserts, for the jury. Under both Brady and Giglio, although petitioner does not have to prove that the verdict would have been different had he received the information, he still has to prove that the information was material. "Material" means that the information must "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 433, 115 S.Ct. 1555 (1995).

This is a difficult showing to make when the purpose of the information is impeachment. The Second Circuit has repeatedly emphasized that "when a witness's credibility has already been substantially called into question in the same respects by other evidence, additional impeachment evidence will generally be immaterial and will not provide the basis for a Brady claim." Tankleff v. Senkowski, 135 F.3d 235, 251 (2d Cir. 1998). See also United States v. Avellino, 136 F.3d 249, 257 (2d Cir. 1998) ("where the undisclosed evidence merely furnished an additional basis on which to challenge a

witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material").

Petitioner's proffered information does not undermine confidence in the jury verdict. Both witnesses were extensively cross-examined at trial. The information that petitioner claims he should have received pales in comparison to the most important piece of disclosed information, namely, that instead of facing twenty-five years to life imprisonment, the witnesses made an agreement to receive six to eighteen years in exchange for testimony against petitioner. That they also received incidental food during debriefing and preparation of their testimony, some rides out of prison to the District Attorneys' Office or to the crime scene, a reminder of the consequences of reneging on a plea agreement, and even a family visit, would not have put this case in any different light had those facts been brought out on cross-examination. Petitioner demonstrated nothing more than that the District Attorney employed routine procedures in dealing with cooperating witnesses under plea agreements. The §440 Court thus did not unreasonably apply Brady or Giglio in denying petitioner relief.

Petitioner additionally argues that he does not know what other benefits Rodriguez and Ibrahim received because the §440 Court improperly denied him an evidentiary hearing on his §440 motion. This contention has no merit. Under the applicable state statute, the state court is not required to conduct an evidentiary hearing when the matter can be disposed of as a matter of law. NYCPL §440.30(4). Petitioner was able to obtain the cooperation of both Rodriguez and Ibrahim, each of whom submitted a statement in support of his motion, which described the "benefits" on which

petitioner based his motion (and which, in several respects, contradict the benefits that he speculates they may have received). Those affidavits were not materially contradicted by the Assistant District Attorneys' affidavits, which discussed the full extent of their agreements and interactions with these witnesses. Petitioner's speculation about what other "benefits" these witnesses might have received – going so far as to assert that perhaps the District Attorney condoned conjugal visits in his office – had no support and the §440 Court did not have to conduct an evidentiary hearing.

## II. Reverse-Batson Challenge

Although the Second Circuit has not yet ruled on the issue, district courts within the Circuit have uniformly held that a state court ruling sustaining a reverse-Batson challenge, see Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 1728 (1986), and Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859 (1991), may not be reviewed on habeas corpus because there is no constitutional right to peremptory challenges. See e.g., Torres v. Smith, No. 03 Civ. 906, 2005 WL 158068, *9-10 (S.D.N.Y. July 6, 2005); Ramirez v. Poole, No. 03-cv-5202, 2005 WL 1123775, *3-5 (E.D.N.Y. May 9, 2005); Haywood v. Portuando, 288 F.Supp.2d 446, 462 (S.D.N.Y. 2003). I agree with the reasoning of these cases. There is no right to any peremptory challenges under the due process clause. None of the concerns addressed by Batson are present when a party is prevented from exercising a peremptory challenge, as petitioner was here.

Beyond this, the sustained Batson challenge about which petitioner complains was reached pursuant to a process that was procedurally correct. It is clear from the transcript that the trial judge understood exactly what he was supposed to do in the three step process; indeed, he demonstrated considerable patience in explaining it to the

5

attorneys and walking them through it, as both of the attorneys seemed less than conversant with the procedure. The trial judge expressly stated that it was the prosecutor's burden both to show a prima facie case, at the first stage, and then to show pretext, at the third stage. He first determined that the prosecution had made a prima facie showing of discrimination. He then required defense counsel to state a race-neutral reason for the challenge. He then heard argument from the prosecutor as to why the reason was pretextual and determined that point. All but one of petitioner's challenges to non-African-American panel members was sustained as non-pretextual (indeed, on most of them, the prosecutor waived the third stage upon hearing defense counsel's neutral basis). The one challenge that was disallowed was based, among other things, on defense counsel's invocation of a ground – prior jury service – which had inexplicably not caused him to strike a similarly situated African-American panel member. The trial court rejected defense counsel's vague claim that he could not "relate to" this particular white panel member and that this white panel member presented an "insurmountable burden" in light of the prosecutor's argument comparing the striking of this juror to another and other facts showing that the challenge was pretextual. It was precisely the way that a stage-3 decision is supposed to work under Batson.

Indeed, petitioner is not really challenging the procedure that the trial court followed. Instead, he is challenging the factual conclusion that the trial court reached. Section §2254(e)(1) of Title 28, however, requires clear and convincing evidence to overturn factual findings, and a Batson finding of pretext or non-pretext is factual. Bryant v. Speckard, 131 F.3d 1076, 1077 (2d Cir. 1997). Petitioner has not nearly met

that burden. The Appellate Division's rejection of his claim was neither contrary to nor an unreasonable application of Batson.

## CONCLUSION

The petition is denied. The Clerk is directed to enter judgment in favor of Respondent. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. §2253(b)(2).

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
August 9, 2007